UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

STEVEN SMITH,

                Plaintiff,

        - against -

THE PUBLIC ADMINISTRATOR OF SUFFOLK
COUNTY; JEAN LEOPOLD EDWIN RENAUD,
M.D.; ERIC DAVIS, M.D.; AZEEM KHAWAJA,
M.D.; RHODINA WILLIAMS, M.D.; MOSES
TAMBE, M.D.; DAVID GREGORY ELLIS,
M.D.; and JENNIFER MITCHELL, M.D.,

                Defendants.

-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**06 CV 3740 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff, Steven Smith, brings this action pursuant to 42 U.S.C. § 1983 alleging that

defendants were deliberately indifferent to his medical needs in violation of the Eighth and

Fourteenth Amendments to the United States Constitution. Defendants, with two exceptions,

move for summary judgment.[1] The Honorable Carol B. Amon referred this motion to me for a

Report and Recommendation in accordance with 28 U.S.C § 636(b). For the following reasons, it

is respectfully recommended that defendants' motion should be granted in part and denied in

part.

---

[1] All defendants move for summary judgment, except for the Public Administrator of Suffolk
County ("Public Administrator") and Dr. Ellis. The Public Administrator recently filed a notice of
appearance on behalf of the estate of Dr. Francois Thebaud, who died on August 25, 2008. Document 124.
Dr. David Gregory Ellis was never served with process in this action. See Pl. Memo at 7 n. 3. Therefore,
plaintiff's complaint against Dr. Ellis should be dismissed. See Fed. R. Civ. P. 4(m) ("If a defendant is not
served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice
against that defendant or order that service be made within a specified time.").

# BACKGROUND

The following facts are undisputed unless otherwise noted.[2]

## I.    Factual History

At all relevant times, plaintiff was an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Defs.' 56.1 ¶ 3. On or about October 14, 2003, plaintiff sought medical treatment at Cape Vincent Correctional Facility for recurring stomach pains. Id. ¶ 13. Plaintiff was diagnosed with gastroesophogeal reflux disease ("GERD") and prescribed Zantac, peptic tabs, and Prevacid. Id. ¶¶ 16-23. On February 1, 2004, plaintiff was transferred to Arthur Kill Correctional Facility ("AKCF"). Id. ¶ 25.

On March 15, 2004, plaintiff saw Dr. Eric Davis at AKCF. Id. ¶ 28. Plaintiff complained about his stomach pain and stated that he was taking Prevacid twice a day. Id.; Pl. Dep. at 107. Dr. Davis requested a consult with a gastrointestinal specialist; the consultation request states: "43-year-old male with epigastric pain times four to six months despite negative H-pylori and Prevacid BID, needs upper endoscopy." Defs.' 56.1 ¶¶ 28-29.

---

[2]  Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried.  See Local Rule 56.1(a); see also Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Defendants have submitted statements of undisputed material facts, and plaintiff filed corresponding counter-statements under 56.1(b). The Court may not rely solely on the Rule 56.1 statements: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion."  Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court relies only upon those facts in the parties' Rule 56.1 statements that are supported by admissible evidence and not controverted by the record.

Dr. Jennifer Mitchell, the AKCF Health Services Director, reviewed Dr. Davis' consultation request and referred the matter to plaintiff's primary care provider, Dr. Francois Thebaud, for follow-up. Id. ¶ 32; Pl.'s 56.1(b) ¶ 74. Dr. Mitchell states,

> I believed that the request form did not contain all of the information needed for approval of the request, most importantly the results of blood and stool tests. I did not deny Dr. Davis' request, nor did I request the tests for my personal evaluation of the need for the consult, but because I believed that the request would not have been approved by the appropriate authorities with the information contained in the request. For that reason, I referred the matter to Dr. Thebaud, plaintiff's assigned primary care provider, to obtain the needed test results and follow up on the consultation request.

Mitchell Dec. ¶ 19. On March 22, 2004, Dr. Thebaud examined plaintiff and ordered abdominal X-rays and blood and stool tests. Defs.' 56.1 ¶¶ 33-36. The results of the blood test indicated that plaintiff was anemic. Id. ¶ 35.

Plaintiff saw Dr. Davis again on June 4, 2004. Id. ¶ 38. Dr. Davis recounts that plaintiff stated that he was feeling better and was no longer taking Prevacid, and therefore, Dr. Davis did not believe that an endoscopy was still necessary. Id. Plaintiff claims that he never told Dr. Davis he was feeling better or that he was not taking Prevacid, and states that the Prevacid was involuntarily discontinued by DOCS staff. Pl.'s 56.1(b) ¶ 38.

Over the next several months, plaintiff was given various medications for stomach pain. Defs.' 56.1 ¶¶ 40-43. On November 19, 2004, Dr. Thebaud saw plaintiff and prescribed Maalox Plus. Id. ¶ 43. Dr. Thebaud examined plaintiff again on January 14, 2005, but no complaints of stomach discomfort were reported. Id. ¶ 44.

On January 31, 2005, Dr. Mitchell co-authored a memorandum with Dr. Lang, the Regional Medical Director, recommending Dr. Thebaud's dismissal from DOCS. Id. ¶ 68. The memorandum states that Dr. Thebaud had been counseled on occasion for poor documentation of

medical care and delay in providing follow-up care, and that he received increased supervision, including random patient chart reviews. Id. ¶ 66. Prior to being terminated, Dr. Thebaud resigned in April or May of 2005. Pl.'s 56.1(b) ¶ 87.

On April 11, 2005, plaintiff saw Dr. Jean Leopold Edwin Renaud. Defs.' 56.1 ¶ 46. Plaintiff testified that he told Dr. Renaud that he "was still having this awful pain in my stomach, that it wouldn't seem to go away. That the medication wasn't really helping." Pl.'s 56.1(b) ¶ 88. Dr. Renaud recommended that plaintiff use pillows for elevation to help with his GERD. Id.

Plaintiff saw Dr. Davis for a third time on May 27, 2005. Defs.' 56.1 ¶ 50. Dr. Davis' note from that date read: "patient in follow-up of GERD, on Prevacid, Prevacid needs refill, wants extra mattress and pillow, then I wrote GERD, extra mattress denied, Prilosec 20 milligrams PO BID and I scheduled him it looks like to see me again on 6/24/05." Id.

Plaintiff saw Dr. Rhodina Williams on July 11, 2005. Id. ¶ 51. Plaintiff testified that at the time he was seen, he was still having stomach pains and that he was upset because he was denied pillows. Pl. Dep. at 129-30. Plaintiff claims that Dr. Williams refused to give him his scheduled physical examination because female doctors do not conduct physicals on male patients. Id. at 130. Defendants assert that "[p]laintiff was not scheduled to have a complete physical on Monday, July 11, 2005, because such examinations generally only occurred on the first Wednesday of the month." Defs.' 56.1 ¶ 51.

Plaintiff saw Dr. Moses Tambe on August 23, 2005. Id. ¶ 53. Defendants maintain that the purpose of the visit was for plaintiff to be evaluated for the repair of eyeglasses, and that Dr. Tambe had no reason to believe that plaintiff had any current complaints of gastrointestinal distress. Id. ¶¶ 53-54. However, plaintiff testified that he told Dr. Tambe about his stomach

problems, and that Dr. Tambe examined his abdomen but refused to prescribe stronger medication. Pl.'s 56.1(b) ¶ 53; Pl. Dep. at 135-36.

Plaintiff states that on or about October 18, 2005, he saw Dr. Azeem Khawaja. Third Am. Compl. ¶ 29; Pl.'s 56.1(b) ¶ 94. Plaintiff claims that he complained to Dr. Khawaja and that he was advised to continue taking his medication. Id. Defendants contend that plaintiff never saw Dr. Khawaja. See Defs.' Reply at 9.

On October 18, 2005, Dr. Felix Ezekwe examined plaintiff, and on October 24, 2005, plaintiff had his blood drawn. Pl.'s 56.1(b) ¶¶ 96-97. The blood test results indicated an abnormal blood count, and Dr. Ezekwe reported plaintiff as being severely anemic, possibly the result of internal bleeding, with a history of GERD and peptic ulcer disease. Defs.' 56.1 ¶ 59. Consequently, Dr. Ezekwe conducted an emergency telemedicine consult with Dr. David Gregory Ellis. Pl.'s 56.1(b) ¶ 98. Dr. Ellis recommended that plaintiff be seen by a gastrointestinal specialist, but instead, Dr. Ezekwe had plaintiff transferred to Staten Island University Hospital ("SIUH") on November 1, 2005. Defs.' 56.1 ¶ 60.

On November 4, 2005, a specialist at SIUH performed an endoscopy on plaintiff. Pl.'s 56.1(b) ¶ 98. Plaintiff was diagnosed with Stage IV metastasized malignant adenocarcinoma of the stomach. Id. Plaintiff had a gastrectomy to remove a six centimeter tumor, and was treated with radiation and chemotherapy. Defs.' 56.1 ¶ 62. He remained hospitalized at SIUH until November 18, 2005. Pl.'s 56.1(b) ¶ 98. When plaintiff returned to AKCF from the hospital, Dr. Mitchell was assigned as his primary care provider. Defs.' 56.1 ¶ 61.

## II.     Procedural History

Plaintiff initiated this action *pro se* on July 28, 2006, alleging that defendants were deliberately indifferent to his medical needs by failing to properly diagnose and treat his cancer. Plaintiff also alleges that Drs. Thebaud and Mitchell failed to properly supervise the doctors at AKCF. On November 15, 2007, *pro bono* counsel appeared on plaintiff's behalf. Plaintiff, by counsel, filed an amended complaint, and thereafter, second and third amended complaints.[3]

On July 14, 2008, defendants' counsel informed the Court that because of a conflict of interest, Dr. Thebaud was being certified for representation by outside counsel pursuant to N.Y. Public Officers Law § 17 and that he had been instructed to find an attorney. Document 51. However, on August 25, 2008, before retaining outside counsel, Dr. Thebaud died.[4] By Order dated June 30, 2009, the Court granted plaintiff's motion to substitute the Public Administrator of Suffolk County for Dr. Thebaud's estate. The Public Administrator filed a Notice of Appearance on behalf of the estate on August 19, 2009. Defendants, except for the Public Administrator and Dr. Ellis, have moved for summary judgment. Plaintiff opposes the motion.

### STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law."

---

[3] Plaintiff's third amended complaint, filed on December 2, 2008, adds Dr. Jennifer Mitchell as a defendant. Defendants, with the exception of Dr. Thebaud and Dr. Ellis, answered the third amended complaint on December 29, 2008.

[4] On September 12, 2008, defendants' counsel filed a Suggestion of Death on the record pursuant to Fed. R. Civ. P. 25(a)(1).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (quoting *Anderson*, 477 U.S. at 248); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000); *see also Baker v. The Home Depot*, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment). For the purposes of defendants' motion for summary judgment, the facts are viewed in the light most favorable to plaintiff.

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita*, 475 U.S. at 586-87. In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. *Anderson*, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation … are insufficient to create a genuine issue of fact." *Niagra Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Id.* (quoting *Anderson*, 477 U.S. at 252).

**DISCUSSION**

**I.      Deliberate Indifference to Medical Needs**

Plaintiff alleges that defendants were deliberately indifferent to his medical needs in violation of his rights under the Eighth Amendment, as incorporated by the Fourteenth Amendment. The Eighth Amendment prohibits the infliction of "cruel and unusual punishment," U.S. CONST. amend VIII, which includes punishments that involve "the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05. In order to establish an Eighth Amendment violation for deliberate indifference to medical needs, a plaintiff must satisfy both an objective and subjective component. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

The objective component requires plaintiff to establish that he was subjected to conditions that are, in objective terms, "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The determination of whether a deprivation is objectively serious requires a two-step inquiry. "The first inquiry is whether the prisoner was actually deprived of adequate medical care . . . Second, the objective test asks whether the inadequacy in medical care is sufficiently serious." Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006). To meet the requirements of the subjective component, plaintiff must show that defendants knew of and disregarded an excessive risk to his health, were aware of the facts from which the inference could be drawn that a substantial risk of serious

harm exists, and must also draw that inference. <u>Chance</u>, 143 F.3d at 702 (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

### A.    Objective Prong

A genuine issue of material fact exists as to whether defendants provided plaintiff with adequate medical care. Plaintiff was seen by medical care providers at AKCF on numerous occasions between February 1, 2004 and November 1, 2005, for abdominal pain and his blood test in March 2004 showed that he was anemic. Drs. Davis, Renaud and Ezekwe all testified that a referral to a gastroenterologist is required when abdominal symptoms persist for more than two months despite medication. <u>See</u> Pl.'s Opp. at 10. Plaintiff's expert, Dr. Peter Kozuch, states:

> physicians are trained to place the various symptoms of dyspepsia such as pain in the upper abdomen, a sensation of fullness, bloating, excessive belching or heartburn in context with so-called alarm findings. These alarms include . . . anemia . . . Any one of these alarm systems help identify a potentially serious cause of abdominal discomfort such as stomach ulcer or stomach cancer . . . Therefore, in Mr. Smith's case, the findings of so-called microcytic anemia and his persistent abdominal pain should have prompted referral, by each of the defendants who cared for Mr. Smith, for immediate upper endoscopy.

Kozuch Dec. ¶¶ 4-5. Here, plaintiff was diagnosed with GERD in October 2003 and a March 2004 blood test revealed he was anemic; however, he did not receive an endoscopy until November 2005, over a year and a half later. A reasonable jury could conclude that defendants' delay in providing an endoscopy denied plaintiff adequate medical care in violation of the Eighth Amendment.

To determine whether the inadequacy in medical care is sufficiently serious, the Court "examine[s] how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." <u>Salahuddin</u>, 467 F.3d at 280. If the "unreasonable

medical care is a failure to provide any treatment," the Court's inquiry into the seriousness of a medical condition considers: "whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain." Id. (citing Chance, 143 F.3d at 702) (internal quotations omitted). "In cases where the inadequacy is in the medical treatment given," such as "an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Salahuddin, 467 F.3d at 280 (citing Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)) (internal quotations omitted) (emphasis omitted). Therefore, although defendants do not dispute that "gastric cancer, as a general proposition, is a serious illness," Defs.' Reply at 5, they urge the Court to consider the particular risk of harm faced by plaintiff because of the delay in treatment, and not plaintiff's underlying medical condition alone. See Smith, 316 F.3d at 186 (citing Chance, 143 F.3d at 702-03).

However, plaintiff's testimony demonstrates that he suffered from chronic and substantial pain which establishes the seriousness of his medical condition. See Hathaway, 37 F.3d at 66 (a medical condition is considered objectively serious if it is a condition of urgency that may result in "death, degeneration or extreme pain") (citing Nance v. Kelly, 912 F.2d 605 (2d Cir. 1990) (Pratt, J., dissenting)). Although defendants dispute that plaintiff continually complained of stomach pain at every medical appointment, plaintiff states that he experienced pain "[l]ike somebody was ripping out your umbilical cord. Like a stabbing pain," and that it was "continuous" and "wouldn't seem to go away." Pl. Dep. at 90, 109, 121. Moreover, the expert testimony leaves little doubt that plaintiff's medical condition was sufficiently serious.

Dr. Kozuch states that "the two-year delay in obtaining requisite endoscopy resulted in his prolonged pain, progressive anemia . . . and contributed to the increased risk for an advanced stage cancer diagnosis." Kozuch Dec. ¶ 10. Defendants' own expert, Dr. Santo DiFino, opines that "[i]f Mr. Smith were diagnosed in early 2004, it is possible that he could have had a lower stage [of cancer]."[5] Defs.' Ex. J. Given the record evidence herein, a reasonable jury could find that defendants' delay in providing plaintiff an endoscopy from March 2004 until November 2005 was unreasonable. Accordingly, plaintiff satisfies the objective component of his Eighth Amendment claim.

## B.     Subjective Prong

To satisfy the second prong of his Eighth Amendment deliberate indifference claim, plaintiff must demonstrate that defendants acted with a "culpable state of mind." Wilson, 501 U.S. 294. "This mental state requires that the charged official acted or failed to act while actually aware of a substantial risk that serious inmate harm will result." Salahuddin, 467 F.3d at 280. This mental state is equivalent to subjective recklessness. Farmer, 511 U.S. at 836-37. "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment Violation." Chance, 143 F.3d at 703. However, "a physician may be deliberately indifferent if he or she consciously

---

[5]  The expert testimony herein establishes that patients with Stage I cancer have a 60-80% five-year survival rate; patients with Stage II cancer have a 34% five-year survival rate; patients with Stage III cancer have a 8-20% five-year survival rate; and patients with Stage IV cancer have a 7% five-year survival rate. See Kozuch Dec. ¶ 11; Kozuch Reply Dec. ¶ 5; DiFino Dec. at 4.

chooses 'an easier and less efficacious' treatment plan." Id. (citing Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974)).

### 1. Dr. Tambe

The record reflects that plaintiff saw Dr. Moses Tambe on only one occasion. Plaintiff alleges that he complained to Dr. Tambe on August 23, 2005 about his severe stomach pain, and that Dr. Tambe examined his abdominal area and reviewed his files but did not refer him for further tests or alter treatment. Third Am. Compl. ¶ 28; see also Pl. Dep. at 135-36. However, the record reflects that the purpose of plaintiff's appointment with Dr. Tambe was to address plaintiff's complaint of broken eyeglasses. See Defs.' Ex. C at 269. The nurse's note on August 18, 2005 and Dr. Tambe's note on August 23, 2005 only reflect plaintiff's desire to see an optometrist. Id. at 269-70. Dr. Tambe attests that "if plaintiff had significant complaints of gastrointestinal distress, I would have noted that in my note of August 23, 2005." Tambe Dec. ¶ 8. There is insufficient evidence from which a reasonable jury could conclude that Dr. Tambe acted with deliberate indifference to plaintiff's medical needs. Therefore, defendants' motion for summary judgment as to Dr. Tambe should be granted, and plaintiff's claims against Dr. Tambe should be dismissed.

### 2. Dr. Khawaja

Plaintiff alleges that he appeared for a scheduled medical appointment with Dr. Khawaja on or about October 18, 2005, and that Dr. Khawaja failed to prescribe medication, conduct a physical examination, and review the tests in his chart. Third Am. Compl. ¶ 29. However, there is no record evidence that Dr. Khawaja ever saw plaintiff on October 18, 2005 or on any other date. Dr. Khawaja attests that he does not recall treating plaintiff, that it is his practice to make

an entry of any appointment on an inmate's health records, that none of the medical entries in plaintiff's medical records were made by him, and that the October 18, 2005 medical entry is not his note or in his handwriting. Khawaja Dec. ¶¶ 4-6. Even assuming that Dr. Khawaja was the doctor who treated plaintiff on or about October 18, 2005, according to the health records, the purpose of plaintiff's medical visit on that date was to address plaintiff's complaint of broken eyeglasses. See Defs.' Ex. C at 269. Moreover, even if Dr. Khawaja had seen plaintiff on that date and failed to prescribe medication, conduct a physical exam and review the tests in his chart, plaintiff fails to demonstrate that the delay in treatment caused by Dr. Khawaja subjected him to a serious risk of harm where plaintiff received an endoscopy less than three weeks later. Therefore, defendants' motion for summary judgment as to Dr. Khawaja should be granted, and plaintiff's claims against Dr. Khawaja should be dismissed.

### 3.    Drs. Davis, Renaud and Williams

Relying on Salahuddin v. Goord, 467 F.3d 263 (2d Cir. 2006), defendants argue that any failure to review plaintiff's medical record or to order an endoscopy is attributable to "simple blindness," not deliberate indifference.[6] Defs.' Memo at 11. They contend that "[t]here is no evidence that any of the defendants were aware of the blood test report of April 2004 showing anemia." Defs.' Reply at 6-7. They further argue that the blood test indicating anemia "was addressed to Dr. Thebaud and would not have been brought to the attention of Dr. Mitchell or any doctor other than Thebaud in the ordinary course of business." Defs.' 56.1 ¶ 35.

---

[6]  In Salahuddin, an inmate alleged that defendant's five-month delay in treating his Hepatitis C violated his rights under the Eighth Amendment. The Court found no constitutional violation and held that the doctor's belief, albeit incorrect, that Hepatitis C only leads to cirrhosis of the liver over the course of 20-30 years, precluded a finding of deliberate indifference. Salahuddin, 467 F.3d at 282. The Court found no circumstantial evidence to suggest "willful blindness," i.e. that the doctor knew of but disregarded a substantial risk that postponing treatment would cause plaintiff serious harm. See id.

Nonetheless, there is sufficient evidence for a reasonable jury to conclude that these defendants knew of and disregarded an excessive risk to plaintiff's health. See Brock v. Wright, 315 F.3d 158, 164 ("evidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to permit a jury to conclude that the defendant was actually aware of it.").

Plaintiff received ongoing medical attention for over two years for complaints of abdominal pain and testified that he told Drs. Davis, Renaud and Williams that his pain persisted despite his medication. Pl. Dep. at 107, 121-30. Plaintiff's medical records, including the April 2004 blood test report, were easily available to defendants. See Ezekwe Dep. at 35. Defendants suggest that Drs. Davis, Renaud, and Williams were not obliged to review plaintiff's medical records. They cite to Kennis v. Mercy Hosp. Medical Center, 491 N.W.2d 161, 165 (Iowa Sup. Ct. 1992), in which a state court in Iowa found that "[w]hether or not physicians have a duty to review a fifteen-year-old medical record on a patient to ascertain potential complications is not a matter that is so obvious as to be within the comprehension of a layperson." See Defs.' Memo at 15 n. 8. However, this Court is not persuaded by a nearly seventeen-year-old case from Iowa. Moreover, this Court finds that a reasonable jury could conclude that defendants' failure to review plaintiff's *recent* medical records, including the blood test results from March 2004 showing that plaintiff was anemic, constitutes deliberate indifference. According to Dr. Kozuch, "[a]s of 1-25-04 Mr. Smith's abdominal complaints displayed alarm signals that were readily apparent" and that "the finding of so-called microcytic anemia and his persistent abdominal pain should have prompted referral, by each of the defendants who cared for Mr. Smith, for immediate endoscopy." Kozuch Dec. ¶¶ 5, 10. Moreover, Dr. Davis and Dr. Renaud testified that even without an indication of anemia, a referral for an endoscopy is appropriate when abdominal

symptoms persist for more than two months, despite medication.[7] See Stevens v. Goord, 535 F.Supp. 2d 373, 385 (S.D.N.Y. 2008) (denial of summary judgment is appropriate where there is "a substantial departure from accepted professional judgment and that the evidence of risk was sufficiently obvious to infer the defendants' actual knowledge of a substantial risk to plaintiff.").

Defendants argue that plaintiff improperly focuses "on the overall care purportedly received . . . without considering the situations facing each individual defendant," Defs.' Reply at 2, and that Drs. Davis, Renaud and Williams treated plaintiff on a "substitute" basis, and that the latter two treated plaintiff on a single occasion. Defendants also argue that plaintiff fails to address the "large gaps" in his medical history indicating his improvement. Defs.' Reply at 7. Nonetheless, it is defendants' burden, not plaintiff's, to demonstrate that they are entitled to judgment as a matter of law. Defendants' argument that these doctors treated plaintiff on a "substitute" basis does not alter the standards of care or the considerations for deliberate indifference. Thus, the fact that plaintiff was bounced between various "substitute" doctors, which was clearly not within his control, as opposed to receiving treatment from a single "non-substitute" doctor, does not relieve defendants of their constitutional obligation to provide adequate medical care.

In a last-ditch effort to sink plaintiff's case, defendants argue that "plaintiff's deposition testimony is demonstrably inaccurate or materially inconsistent with his other statements and

---

[7] Dr. Davis testified, "if a patient has [epigastric] symptoms four to six weeks after I have started the patient on appropriate medication and they still have symptoms, then an endoscopy would be appropriate." Davis Dep. at 61. Dr. Renaud testified, "[u]sually I refer [a] patient after six to eight weeks of treatment, medical treatment, and I stop the medicine after that and I see how the patient problem, whether the patient problem is solve[d] or not. If the problem continue[s], then I refer to a gastroenterologist. Other situation I can have a patient who comes to me taking medicine and saying the medicine is not helping me and I refer." Renaud Dep. at 54.

cannot be used to create genuine issues of material fact." Defs.' Reply at 8. Defendants cite to Denton v. Hernandez, 504 U.S. 25 (1992) to support their argument to discredit plaintiff's deposition testimony. The Supreme Court in Denton stated that "a court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." Denton, 504 U.S. at 32-33 (internal citations and quotations omitted).

Defendants' use of Denton is off base and inappropriate. There is nothing fantastic or delusional about plaintiff's claims, and plaintiff's deposition testimony is neither fanciful nor replete with the level of contradictions and inconsistencies which would cast doubt upon its plausibility. See Shabazz v. Pico, 994 F.Supp. 460, 470-71 (S.D.N.Y. 1998) (disposing of improbable allegations replete with inconsistent and contradictory statements); see also Jeffreys v. City of New York, 426 F.3d 549 (2d Cir. 2005). The record reflects that there are material issues of fact in dispute. There is sufficient record evidence from which a reasonable jury could conclude that the evidence of risk was sufficiently obvious to infer Drs. Davis, Renaud and Williams' actual knowledge of a substantial risk to plaintiff's serious medical needs. Accordingly, defendants' motion for summary judgment as to these doctors should be denied.

### 4.    Dr. Mitchell

Plaintiff alleges that Dr. Mitchell was deliberately indifferent to his medical needs by not approving Dr. Davis' referral for an endoscopy in March 2004 and by failing to properly supervise defendants, particularly Dr. Thebaud. While there is no *respondeat superior* liability under 42 U.S.C. § 1983, a supervisor can be held liable "in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after

being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003).

Plaintiff argues that Dr. Mitchell's decision to refer him to Dr. Thebaud for further tests was inconsistent with DOCS policy. Plaintiff states that "[t]he information contained on the face of Dr. Davis' referral request demonstrated the medical appropriateness and necessity of referral of Mr. Smith to a gastrointestinal specialist for endoscopy," Pl.'s 56.1(b) ¶ 32, and cites to the DOCS "Clinician Orientation Manual," which states that "[s]pecialty referrals . . . are approved or denied based on medical necessity criteria." Pl. Ex. 4 at 2069.

Nonetheless, the guidelines also provide that each referral request should include basic referral criteria,[8] and that "[i]f information is not sufficient to determine medical need, a referral can be 'pended' or routed back to the facility for additional information." Id. Dr. Mitchell attests that she referred plaintiff to Dr. Thebaud because she believed that "the request form did not contain all of the information needed for approval . . . [and] would not have been approved by the appropriate authorities." Mitchell Dec. ¶ 19. While plaintiff disagrees with Dr. Mitchell's

_____

[8] Basic referral criteria includes: a clear description of the one problem to be evaluated; handwriting must be legible; current signs and symptoms; frequency-occurrences of episodes; duration of problems; a short and concise clinical summary for the initial evaluation or follow-up consult that meets medical necessity (including facility primary care treatment/interventions and patient's response, current medications); pertinent physical and laboratory findings; specific medical action/intervention being requested; specify surgical procedure requested and include (1) relevant history to justify surgery or procedure at time of request; (2) diagnosis of condition indicating surgery/procedure; (3) provide specific surgical procedure requested. The guidelines also require additional information for gastrointestinal conditions. Pl. Ex. 4 at 2070-72.

decision, "disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp.2d 303, 312 (S.D.N.Y. 2001). Therefore, Dr. Mitchell's decision to refer plaintiff for further tests does not constitute deliberate indifference.

However, a material issue of fact exists as to whether Dr. Mitchell directly participated in a constitutional violation, failed to remedy a wrong, was grossly negligent in supervising Dr. Thebaud, or failed to act on information indicating that unconstitutional acts were occurring. Dr. Mitchell attests that "Dr. Thebaud had been counseled on occasion for poor documentation of medical care and delay in providing follow up care," and "received increased supervision, including random patient chart reviews." Mitchell Dec. ¶ 50. She co-authored a January 31, 2005 memorandum detailing Dr. Thebaud's failures dating back to 2001 and 2002 and recommending Dr. Thebaud's termination "[d]ue to his failure to take appropriate clinical action . . . and his pattern of poor judgment." Pl. Ex. 3.

Defendants argue that "[t]here is no evidence that Dr. Mitchell believed Thebaud required such micromanagement" in Spring of 2004, Defs.' Reply at 14, and Dr. Mitchell states that she "had no reason to believe in Spring 2004 that Dr. Thebaud would present a problem on follow up concerning any abnormal blood tests." Mitchell Dec. ¶ 54. However, "[a] reasonable jury could find that the significant risk that Dr. Thebaud would not provide adequate or appropriate follow-up care to Mr. Smith was already obvious and known to Dr. Mitchell by March 2004." Pl. Memo at 21. Dr. Mitchell wrote on Dr. Davis' referral form, "[follow-up with] Dr. T after tests ordered 3/22/04." Pl. Ex. 2 at 129. While Dr. Mitchell testified that this meant that Dr. Thebaud should follow-up with plaintiff, Mitchell Dep. at 228, this note could also mean

that Dr. Mitchell noted she should follow-up on plaintiff's test results. Thus, a reasonable jury could find that Dr. Mitchell directly participated in the alleged constitutional violation or was grossly negligent in supervising Dr. Thebaud when she failed to "follow-up" with plaintiff after the tests missing from Dr. Davis' consultation request were performed.

Dr. Mitchell's decision to refer Dr. Davis' consultation request to Dr. Thebaud rather than back to Dr. Davis is also troubling. Although defendants state that Dr. Mitchell sent plaintiff to Dr. Thebaud because he was plaintiff's primary care provider, plaintiff was a new inmate at AKCF and had never been seen by Dr. Thebaud. As the record reflects, plaintiff saw many different doctors at AKCF. It is unclear when plaintiff was assigned to Dr. Thebaud or what significance attaches to defendants' pronouncement that Dr. Thebaud was plaintiff's primary care provider. In any event, Dr. Mitchell chose to send plaintiff to Dr. Thebaud instead of referring plaintiff back to Dr. Davis, the doctor who had already examined plaintiff and had requested an endoscopy for plaintiff.

Even assuming that Dr. Mitchell had "no reason to believe in Spring 2004 that Dr. Thebaud would present a problem," she came to believe that Dr. Thebaud should not be practicing medicine in late 2004. Mitchell Dec. ¶ 54. A reasonable jury could find that Dr. Mitchell was deliberately indifferent to plaintiff's medical needs by requiring him to be seen by Dr. Thebaud in November 2004 and again in January 2005, knowing that Dr. Davis had requested an endoscopy for plaintiff in March 2004 and that Dr. Thebaud had failed to take appropriate clinical action dating back to 2001. Therefore, defendants' motion for summary judgment as to Dr. Mitchell should be denied.

## II.     Qualified Immunity

Defendants argue that they are entitled to qualified immunity. The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Here, there are material issues of fact in dispute regarding defendants' treatment of plaintiff's serious medical needs. Therefore, defendants' motion for summary judgment based on qualified immunity should be denied. See Husain v. Springer, 494 F.3d 108, 133 (2d Cir. 2007) ("[s]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness") (quoting Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999)); see also Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) ("summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain.").

## CONCLUSION

Accordingly, defendants' motion for summary judgment should be granted in part and denied in part. Defendants' motion should be granted as to Drs. Tambe and Khawaja, and defendants' motion should be denied as to Drs. Davis, Renaud, Williams and Mitchell.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. <u>Marcella v. Capital Dist. Physician's Health Plan, Inc.</u>, 293 F.3d 42 (2d Cir. 2002); <u>Small v. Sec'y of Health and Human Services</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

SO ORDERED.


_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 31, 2009
       Brooklyn, New York